# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

**6001, INC.**,

    Plaintiff,

vs.                                                                 No. **02-CV-97 MCA/DJS**

**CITY OF ALBUQUERQUE**,

    Defendant.

## MEMORANDUM OPINION AND ORDER
## GRANTING PRELIMINARY INJUNCTION

**THIS MATTER** comes before the Court on Plaintiff's Motion for a Temporary Restraining Order and Preliminary Injunction [Doc. No. 2], filed on January 25, 2002. The Court held hearings on Plaintiff's motion in Albuquerque, New Mexico, on January 25, 2002, and February 25, 2002, at which both parties appeared through counsel. Having considered the pleadings of record, the arguments and evidence presented by counsel, and the relevant law, and being otherwise fully advised in the premises, the Court hereby **GRANTS** Plaintiff's Motion for the reasons stated below. Defendant is **PRELIMINARILY ENJOINED** from taking any zoning enforcement action against Plaintiff's Eubank Boulevard location based on the 1999 amendment to the Zoning Code regarding adult amusement establishments.

## I. FACTUAL AND PROCEDURAL BACKGROUND

1. Plaintiff 6001, Inc. (d/b/a "TD's Show Club") is a corporation organized under the laws of the State of New Mexico that operates a business located at 2120 Eubank Boulevard, NE, in Albuquerque, New Mexico.

2. For the past twelve to thirteen years, women employed by, or associated with, Plaintiff have performed choreographed erotic dances at Plaintiff's Eubank Boulevard location. During such performances, the dancers cover their breasts using only opaque theatrical makeup and flesh-colored pieces of latex that fit over their nipples and areolae.

3. Defendant City of Albuquerque is a home-rule municipality organized by charter under the Constitution and laws of the State of New Mexico.

4. Pursuant to Article I of its charter, Defendant has enacted a zoning code contained in Chapter 14, Article 16 of the City of Albuquerque's Revised Ordinances of 1994 (hereinafter "Zoning Code").

5. Section 14-16-1-3(A) of the Zoning Code states, in pertinent part, that the Zoning Code is intended to "create orderly, harmonious, and economically sound development in order to promote the health, safety, convenience, and general welfare of the citizens of the city."

6. Section 14-16-1-5(B) of the Zoning Code defines an "adult amusement establishment" as an establishment which:

> (1) provides amusement or entertainment which is distinguished or characterized by an emphasis on material depicting, describing, or relating to specified sexual activities or specified anatomical areas;

(2) features topless dancers, exotic dancers, strippers, male or female impersonators, or similar entertainment; or

(3) upon payment of a fee provides an escort or a dance partner to its patrons.

7. Section 14-16-1-5(B) defines "specified anatomical areas" as:

(1) Less than completely and opaquely covered:

(a) Human genitals, pubic region;

(b) Buttock;

(c) Female breast below a point immediately above the top of the areola to and including the bottom of the breast; covering of only the nipple and areola of the breast shall not constitute such covering; and

(2) Human male genitals in a discernibly turgid state, even if completely and opaquely covered.

8. In a published opinion filed on March 25, 1994, the New Mexico Court of Appeals concluded that "theatrical makeup, which was spread completely over the required surfaces of the dancers' breasts, and . . . plastic circles, which were placed on the dancers' nipples, satisfied the plain and unambiguous language of" the version of Section 14-16-1-5(B) of the Zoning Code in effect at that time. TBCH, Inc. v. City of Albuquerque, 117 N.M. 569, 571, 874 P.2d 30, 32 (1994).

9. In December 1999, the City Council amended the definition of "specified anatomical areas" in Section 14-16-1-5(B) of the Zoning Code by adding that "opaquely covered means covered with opaque cloth. Opaque makeup or any device or covering

intended to give the appearance of or simulate human genitals, pubic region, buttock or female breast shall not constitute such covering."

10. As a result of the December 1999 amendment to the Zoning Code, Defendant notified Plaintiff by letter dated December 31, 2001, that Defendant regarded the erotic dancing at the Eubank Boulevard location as an adult amusement activity under the Zoning Code and that Defendant recognized such activity as a nonconforming use.

11. Section 14-16-3-4 of the Zoning Code provides amortization periods for nonconforming uses ranging from one year to sixty years. Section 14-16-3-4(A)(1)(a)(2) specifically provides that: "Adult amusement establishments, which constitute nonconforming uses must vacate their premises within two years after they become nonconforming. Adult bookstores, adult photo studios, and adult theaters which constitute nonconforming uses must vacate their premises within five years after they become nonconforming."

12. The Zoning Code also distinguishes between "conditional uses" and "permissive uses." Section 14-16-1-5(B) states that conditional "uses require individual approval on a given lot." The standards and procedures for obtaining a permit for a conditional use are further specified in Sections 14-16-4-2 and 14-16-4-4. Section 14-16-1-3(B) states that: "Any use not designated as a permissive or conditional use in a zone is specifically prohibited from that zone, except as otherwise provided herein."

13. Adult amusement establishments are not listed as "permissive uses" anywhere in the Zoning Code.[1] There are, however, provisions in the Zoning Code that list "adult amusement establishments" as "conditional uses."

14. Section 14-16-2-17(B) of the Zoning Code lists "adult amusement establishment" as a conditional use in a C-2 zone, as follows:

> (1) Adult amusement establishment, adult book store, adult photo studio, and adult theater, provided:
>
> (a) The use is located at least 1,000 feet from any adult amusement establishment, adult book store, adult photo studio, or adult theater; and
>
> (b) The use is located at least 500 feet from the nearest residential zone, or from any church or pre-elementary, elementary or secondary school.

Such uses also are conditional in the C-3 zone under Section 14-16-2-18(B).

15. At the hearing on February 25, 2002, evidence was presented that Plaintiff's business on Eubank Boulevard is zoned C-2, but its property line is located less than 500 feet from the property line of the nearest residential zone when measured "as the crow flies."[2]

---

[1] In Haddad v. City of Albuquerque, CIV No. 93-139-M (D.N.M. Aug. 18, 1993) (memorandum opinion and order granting preliminary injunction), the Court noted that "there is only one area within the city, the downtown core area, in which [an adult business was] a permissive use" under a "Downtown Core Revitalization Strategy" in effect at that time. Defendant has submitted no evidence or authority indicating that the Zoning Code classifies an adult amusement establishment as a permissive use in any area at this time.

[2] At the hearing on February 25, 2002, Defendant objected to some of Plaintiff's exhibits and the testimony of Plaintiff's land surveyor on the grounds that Plaintiff had challenged the method for measuring compliance with the Zoning Code's distance requirements for the first time in its reply brief. The Court overrules this objection, but finds that Plaintiff's evidence regarding alternative methods of measuring distances from Plaintiff's Eubank Boulevard location is not dispositive.

16. There exist commercial properties in the C-2 and C-3 zones that are located at least 1,000 feet from any adult amusement establishment, adult book store, adult photo studio, or adult theater, and at least 500 feet from the nearest residential zone, church, or pre-elementary, elementary, or secondary school.

17. At the hearing on February 25, 2002, Defendant did not present any evidence that Plaintiff's Eubank Boulevard location has been shown to cause negative secondary effects on the surrounding area.

## II. **LEGAL ANALYSIS AND CONCLUSIONS OF LAW**

### A. **Standard for Granting Preliminary Injunction**

As both parties have been afforded the opportunity to present evidence and brief the issues raised by Plaintiff's motion, the procedural requirements for issuing a temporary restraining order under Fed. R. Civ. P. 65(b) do not apply in this case. Instead, the Court focuses its inquiry on the substantive requirements for issuing a preliminary injunction under Fed. R. Civ. P. 65(a). In order to establish grounds for preliminary injunctive relief, Plaintiff must show that it will suffer irreparable injury unless the injunction issues; that the threatened injury to Plaintiff outweighs the damage the injunction may cause to Defendant; that the injunction, if issued, would not be adverse to the public interest; and that there is a substantial likelihood that Plaintiff will succeed on the merits. See Elam Constr., Inc. v. Reg'l Transp. Dist., 129 F.3d 1343, 1346-47 (10th Cir. 1997).

The loss of freedoms guaranteed by the First and Fourteenth Amendments to the United States Constitution "for even minimal periods of time, unquestionably constitutes

irreparable injury." Elrod v. Burns, 427 U.S. 347, 373 (1976) (plurality opinion), accord ACLU v. Johnson, 194 F.3d 1149, 1163 (10th Cir. 1999). "[P]otential harm to the Plaintiff, in the form of a prior restraint on its constitutionally protected activity, outweighs any harm to the Defendant that may arise as a result of its inability to enforce constitutionally suspect legislation." BJS No. 2, Inc. v. City of Troy, 87 F. Supp. 2d 800, 818 (S.D. Ohio 1999); accord ACLU, 194 F.3d at 1163. "'[I]t is in the public interest to uphold a constitutionally guaranteed right.'" BJS No. 2, Inc., 87 F. Supp. 2d at 818 (quoting Playboy Enters., Inc. v. Meese, 639 F. Supp. 581, 587 (D.D.C. 1986)). Consequently, these three factors would weigh in favor of granting a preliminary injunction if Plaintiff carries its burden of showing a substantial likelihood that it will prevail on the merits of a dispositive claim under the First or Fourteenth Amendment.

### B. Likelihood of Success on the Merits

It is well established that non-obscene erotic dance performances, including those performed at Plaintiff's Eubank Boulevard location, are a form of expression entitled to First Amendment protection. See 801 Conklin St. Ltd. v. Town of Babylon, 38 F. Supp. 2d 228, 235 (E.D.N.Y. 1999); cf. Sable Communications, Inc. v. FCC, 492 U.S. 115, 126 (1989) ("Sexual expression which is indecent but is not obscene is protected by the First Amendment."). While many people may consider such performances to be in poor taste and lacking artistic merit, it "is a bedrock principle underlying the First Amendment . . . that the government may not prohibit the expression of an idea simply because society finds the idea itself offensive or disagreeable." Texas v. Johnson, 491 U.S. 397, 414 (1989).

The First Amendment, however, does not afford the same level of protection to every kind of expression under all circumstances. To determine what level of protection is appropriate, the Court must first ascertain whether the governmental regulation at issue is "related to the suppression of . . . expression." Id. at 403. As a general rule, "regulations enacted for the purpose of restraining speech on the basis of its content presumptively violate the First Amendment." City of Renton v. Playtime Theatres, Inc., 475 U.S. 41, 46-47 (1986). The government may impose such content-based restrictions on constitutionally protected forms of expression only when it rebuts this presumption by showing that its content-based restrictions are the least restrictive means of furthering a compelling governmental interest. See Sable Communications, Inc., 492 U.S. at 126.

On the other hand, governmental regulations that are neutral as to content and simply regulate the time, place, and manner in which constitutionally protected forms of expression may occur generally "are acceptable so long as they are designed to serve a substantial governmental interest and do not unreasonably limit alternative avenues of communication." City of Renton, 475 U.S. at 47. In addition, "when 'speech' and 'nonspeech' elements are combined in the same course of conduct, a sufficiently important governmental interest in regulating the nonspeech element can justify incidental limitations on First Amendment freedoms" under certain circumstances. United States v. O'Brien, 391 U.S. 367, 376 (1968). Erotic dance performances have been found to contain such a nonspeech element when, in addition to conveying an erotic message through the medium of dance, they also involve

public nudity or overt sexual behavior which is not in itself expressive. See, e.g., City of Erie v. Pap's A.M., 529 U.S. 277, 289 (2000) (plurality opinion).

### 1. Severability of Conditional Use Zoning

In the "area of free expression a licensing statute placing unbridled discretion in the hands of a government official or agency constitutes a prior restraint and may result in censorship." City of Lakewood v. Plain Dealer Publ'g Co., 486 U.S. 750, 757 (1988). Thus, "courts have not hesitated to invalidate ordinances which give city officials excessive discretion in cases involving the issuance of a conditional permit or license to operate an adult business." CR of Rialto, Inc. v. City of Rialto, 975 F. Supp. 1254, 1264 (C.D. Cal. 1997). In addition, courts "have invalidated ordinances which did not set time limits for decisions in situations involving sexually oriented businesses because '[a] scheme that fails to set reasonable time limits on the decisionmaker creates the risk of indefinitely suppressing permissible speech.'" Id. (quoting FW/PBS, Inc. v. City of Dallas, 493 U.S. 215, 227 (1990)).

Plaintiff contends that the Zoning Code imposes an unlawful prior restraint on its constitutional right to freedom of speech by classifying all adult amusement establishments as conditional uses and thereby subjecting all such establishments to a permitting scheme that fails to sufficiently restrain the discretion of government officials in deciding what criteria to apply and when a decision should be made regarding whether to grant or deny a conditional-use permit. Defendant does not contest that the application of its conditional-use zoning to adult amusement establishments is unconstitutional under Haddad v. City of

Albuquerque, CIV No. 93-139-M (D.N.M. Aug. 18, 1993) (memorandum opinion and order granting preliminary injunction). See also Haddad, CIV No. 93-139-M (D.N.M. Feb. 3, 1994) (final order granting permanent injunction). Indeed, Defendant's own parenthetical annotations to the Zoning Code already contain such an admission. See Albuquerque, N.M., Rev. Ordinances § 14-16-1-5(B) (1994) (hereinafter "Zoning Code") (noting parenthetically that "Conditional Use Zoning as applied to Adult Amusement Establishments was held to be unconstitutional by the United States District Court for the District of New Mexico on August 18, 1993, in Haddad v. City of Albuquerque, CIV No. 93-139-M Civil" and that "[t]he decision was not appealed"); id. § 14-16-2-17(B) (same).

Nevertheless, Defendant contends that preliminary injunctive relief is not warranted in this instance because the distance requirements contained in Section 14-16-2-17(B) of the Zoning Code allegedly provide an independent, lawful basis for classifying Plaintiff's Eubank Boulevard location as a nonconforming use under the Zoning Code. Defendant further contends that these distance requirements can be severed from the classification of adult amusement establishments as conditional uses elsewhere in Section 14-16-2-17(B).

The classification of adult amusement establishments as conditional uses has not been judicially or legislatively severed from the Zoning Code as of the date of this Court's ruling. The issue of severability was not decided in Haddad, supra, because it was not disputed that the adult business at issue in that case met the distance requirements which Defendant now seeks to separate from its conditional use permitting scheme. In addition, the business at issue in Haddad was an adult book and video store, not an adult amusement establishment

-10-

offering live erotic dancing. Thus, while Defendant remains bound by the permanent injunction in Haddad, the Court's opinion in that case neither expressly states nor fairly implies that the Zoning Code's distance requirements as applied to adult amusement establishments have been severed from the conditional-use permitting scheme.

It is beyond dispute that there are circumstances under which the government may impose reasonable distance requirements upon adult businesses in a content-neutral manner that does not violate the First Amendment. See City of Renton, 475 U.S. at 54. Further, the Court assumes for purposes of analysis that a straight measurement of the shortest distance from property line to property line provides a sufficiently objective method of measuring compliance with such distance requirements and that there exists a reasonable amount of commercial property in the City of Albuquerque which is located at least 500 feet from a residential zone, church, or school and at least 1000 feet from any other adult amusement establishment, adult book store, adult photo studio, or adult theater. Notwithstanding these assumptions, however, the Court concludes that the likelihood of salvaging the distance requirements as they are presently situated in Section 14-16-2-17(B)(1) of the Zoning Code is not substantial enough to deny preliminary injunctive relief to Plaintiff at this juncture.

Whether an unconstitutional provision is severable from the remainder of the Zoning Code is a matter of state law. See Leavitt v. Jane L., 518 U.S. 137, 139 (1996) (per curiam). Section 1-1-2 of the City of Albuquerque's Revised Ordinances of 1994 states that: "Unless otherwise provided herein, or by law or implication required, the same rules of construction, definition, and application shall govern the interpretation of this code as those governing the

interpretation of state law." Further, Section 1-1-7 of the City of Albuquerque's Revised Ordinances of 1994 contains the following severability clause:

> The provisions of this code of ordinances are severable, and if any provision, article, section, division, clause, sentence, or part thereof is held to be illegal, invalid, unconstitutional, or inapplicable, to any person, persons, circumstances, situation, or otherwise, the illegality, invalidity, unconstitutionality or inapplicability shall not affect or impair any of the remaining sentences, clauses, divisions, sections, articles, or parts of this code of ordinances, or their applicability to other persons, circumstances or situations.

Under New Mexico law, "[i]t is a fundamental principle that a part of a statute may be invalid and the remainder valid, where the invalid part can be separated from other portions, without impairing the force and effect of the remaining portions." Giant Indus. Ariz., Inc. v. Taxation & Revenue Dep't, 110 N.M. 442, 444, 796 P.2d 1138, 1140 (Ct. App. 1990) (citing Bradbury & Stamm Constr. Co. v. Bureau of Revenue, 70 N.M. 226, 372 P.2d 808 (1962)). A partially invalid statute must satisfy the following test before it can continue in force:

> (1) the invalid part must be separable from the other portions without impairing the force and effect of the remaining parts; (2) the legislative purpose expressed in the valid portion can be given force and effect without the invalid part; and (3) when considering the entire act, it cannot be said that the legislature would not have passed the remaining part if it had known that the objectionable part was invalid.

Id. "[T]he effect of a declaration of severability in the ordinance creates a presumption that the ordinance is divisible," City of Albuquerque v. Cauwels & Davis, Mgmt. Co., 96 N.M. 494, 496, 632 P.2d 729, 731 (1981), because such a declaration is presumed to show that the

legislative body would "have passed the remaining part if it had known that the objectionable part was invalid," Giant Indus. Ariz., Inc., 110 N.M. at 444, 796 P.2d at 1140.

"It is beyond the power of the courts," however, "to rewrite an ordinance." Cauwels & Davis, Mgmt. Co., 96 N.M. at 496, 632 P.2d at 731; cf. Virginia v. Am. Booksellers Ass'n, 484 U.S. 383, 397 (1988) ("[W]e will not rewrite a state law to conform it to constitutional requirements."). Thus, the Court cannot " dissect invalid portions and reframe an ordinance from the valid portions where the remaining features will be substantially affected by the removal" or where "the valid portions are inextricably intertwined with the invalid portions of the ordinance" such that the Court "cannot separate them without substantially affecting the ordinance." Cauwels & Davis, Mgmt. Co., 96 N.M. at 496, 632 P.2d at 731; cf. Reno v. ACLU, 521 U.S. 844, 884 (1997) ("In considering a facial challenge, this Court may impose a limiting construction on a statute only if it is readily susceptible to such a construction." (Internal quotation omitted)).

At this point, Defendant has identified no permissible alternatives for separating invalid portions from the remainder of the Zoning Code. Rather, it appears that the likelihood of a constitutional violation arises from the combined application of two or more provisions which are not necessarily unconstitutional standing alone or as applied to other uses that do not involve constitutionally protected forms of expression. Cf. 801 Conklin St. Ltd., 38 F. Supp. 2d at 245 (concluding that a "special exception use permit requirement ... may be completely appropriate when applied to businesses which do not involve protected speech"); C.R. of Rialto, Inc. v. City of Rialto, 964 F. Supp. 1401, 1406 (C.D. Cal. 1997)

(concluding that a federal district court lacked judicial or statutory authority to sever one facially constitutional portion of a zoning regulation in order to allow another facially constitutional portion of the regulation to exist). Thus, at this preliminary juncture, there exists a substantial likelihood that the valid portions of the Zoning Code are "inextricably intertwined" with the invalid portions such that the Court "cannot separate them without substantially affecting the ordinance." Cauwels & Davis, Mgmt. Co., 96 N.M. at 496, 632 P.2d at 731. The Court draws this conclusion only for purposes of analyzing whether Plaintiff is entitled to preliminary injunctive relief in this case. The Court neither states nor implies that the Zoning Code is unenforceable in any other respect.

### 2. **Clothing Requirement**

Plaintiff also challenges the constitutionality of the December 1999 amendment to Section 14-16-1-5(B) of the Zoning Code, which causes businesses to be classified as adult amusement establishments unless their dancers cover their breasts and other "specified anatomical areas" with cloth instead of makeup. There is a substantial likelihood that Plaintiff will succeed on the merits of this challenge as well, because Defendant has not shown that the amendment in question satisfies all four elements of the test for "content-neutral" regulation articulated in O'Brien, 391 U.S. at 377.

> A government regulation is "sufficiently justified" under the O'Brien test
>
> if it is within the constitutional power of the Government; if it furthers an important or substantial governmental interest; if the governmental interest is unrelated to the suppression of free expression; and if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest.

-14-

Id. While it is well within Defendant's constitutional power to enact zoning regulations, see Young v. Am. Mini Theatres, Inc., 427 U.S. 50, 73-75 (1976) (Powell, J., concurring in part), in this instance Defendant has not made any showing that the December 1999 amendment to Section 14-16-1-5(B) was enacted based upon any evidence that it is tailored to further a substantial government interest as required under the O'Brien test.

Defendant attempts to rely on the Supreme Court's recent plurality opinion in City of Erie, 529 U.S. at 296-301, which concluded that a municipality's public-nudity ordinance satisfied the O'Brien test and was sufficiently justified because its requirement that dancers wear "pasties and G-strings" had only a *de minimis* impact on the expressive element of erotic dancing which was no greater than necessary to further the substantial governmental interest in combating the negative secondary effects caused by the dance's nonexpressive element. The Court concludes that City of Erie is distinguishable in the following respects.

First, the City of Erie's ordinance prohibited "'showing of the female breast with less than a fully opaque covering of any part of the nipple.'" Id. at 284 n.1 (quoting City of Erie, Pa., Codified Ordinances art. 711 (1994)). In contrast, Section 14-16-1-5(B) of the Zoning Code at issue here imposes an additional requirement that the female breast be covered with opaque cloth "below a point immediately above the top of the areola to and including the bottom of the breast; covering of only the nipple and areola of the breast shall not constitute such covering." Defendant has not presented any evidence to show that this additional requirement is "no greater than necessary to further the city's interest" in combating negative

secondary effects purportedly associated with adult amusement establishments. City of Erie, 529 U.S. at 301 (plurality opinion).

City of Erie also is distinguishable because the plaintiff in that case "never challenged the city council's findings" that nude-dancing establishments caused negative secondary effects "or cast any specific doubt on the validity of those findings." Id. at 298 (plurality opinion). In its briefs, Plaintiff has cited case law that references studies which may cast doubt upon the assumption that adult businesses always cause negative secondary effects on surrounding areas. See, e.g., Flanigan's Enters., Inc. v. Fulton County, 242 F.3d 976, 979-80, 986-87 (11th Cir. 2001) (citing studies conducted by local police, appraisers, and consultants which found no evidence that adult entertainment businesses caused negative secondary effects); cf. City of Renton, 475 U.S. at 51-52 (concluding that "whatever evidence the city relies upon" must be "reasonably believed to be relevant to the problem that the city addresses"). Accordingly, the Court concludes there is a substantial likelihood that Plaintiff may prevail on the merits of its challenge to the 1999 amendment to the definition of "opaquely covered" in Section 14-16-1-5(B) of the Zoning Code.

### 3. **Amortization Period for Nonconforming Uses**

Plaintiff's next contention is that the amortization periods for nonconforming uses in Section 14-16-3-4(A) of the Zoning code violate the Equal Protection Clause of the Fourteenth Amendment. For purposes of analyzing whether Plaintiff is entitled to preliminary injunctive relief, the Court finds it unnecessary to decide whether the Zoning Code's amortization requirements violate the Equal Protection Clause. Adult businesses

generally "can fare no better under the Equal Protection Clause than under the First Amendment." City of Renton, 475 U.S. at 55 n.4; see also Holmberg v. City of Ramsey, 12 F.3d 140, 144 (8th Cir. 1993). Thus, the disposition of Plaintiff's equal protection claim is likely to follow from the Court's analysis of Plaintiff's First Amendment claims.

## III. CONCLUSION

For the foregoing reasons, the Court concludes that Plaintiff has shown a substantial likelihood of prevailing on one or more of its First Amendment claims and that the remaining factors weigh in favor of granting a preliminary injunction in this case. This conclusion makes it necessary for the Court to address Defendant's request that Plaintiff be required to post a bond or other security under Fed. R. Civ. P. 65(c). It is within the Court's discretion to conclude that no bond is necessary when "there is an absence of proof showing a likelihood of harm." Cont'l Oil Co. v. Frontier Ref. Co., 338 F.2d 780, 782 (10th Cir. 1964). After fully considering the evidence presented in this matter, the Court finds that Defendant has not shown a likelihood of harm resulting from the preliminary injunctive relief requested by Plaintiff. Therefore, the Court determines that no bond is necessary.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for a Preliminary Injunction is **GRANTED**;

**IT IS FURTHER ORDERED** that Defendant, and, pursuant to Fed. R. Civ. P. 65(d), Defendant's officers, agents, servants, employees, attorneys, and those persons in active concert or participation with Defendant who receive actual notice of this order, are

**PRELIMINARILY ENJOINED** from taking any zoning enforcement action against Plaintiff's business at 2120 Eubank Boulevard NE, in Albuquerque, New Mexico, that is based in any way upon the 1999 amendment to the Zoning Code relating to adult amusement establishments.

    **IT IS FURTHER ORDERED** that the requirement for a security under Fed. R. Civ. P. 65(c) is **WAIVED**.

                                                          **M. CHRISTINA ARMIJO**
                                                           United States District Judge